USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2212 UNITED STATES, Appellee, v. NELSON FIELD, Defendant-Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and McAuliffe*, District Judge.  ______________ ____________________ Gordon R. Blakeney, Jr., for appellant. _______________________ Jean B. Weld, Assistant Attorney General, with whom Paul M. ______________ _______ Gagnon, United States Attorney, was on brief for appellee. ______ ____________________ November 4, 1994 ____________________ _______________________ *Of the District of New Hampshire, sitting by designation. BOWNES, Senior Circuit Judge. There are two issues BOWNES, Senior Circuit Judge. ____________________ raised in this appeal: whether the district court erred in accepting defendant's guilty plea; and whether the district court erred in sentencing defendant. Defendant-appellant was charged in count two of a two-count indictment with being a felon in possession of a firearm on February 28, 1993, in violation of 18 U.S.C. 922(g)(1).1 Defendant signed a written plea agreement on July 16, 1993, and entered a plea of guilty on July 28, 1993. The Acceptance of the Guilty Plea The Acceptance of the Guilty Plea _________________________________ Defendant challenges the district court's acceptance of his guilty plea on two grounds: that the plea was not truly voluntary because the district court did not establish on the record that he understood the charges against him and the relation of the law to the facts; and, that the district court accepted the plea without establishing an adequate record showing a factual basis for the plea. For the reasons that follow, we reject defendant's attacks on the acceptance of his guilty plea. We think it advisable to start our analysis with the facts surrounding the arrest of defendant. On February 28, 1993, the police in Jaffrey, New Hampshire, received a 911 call alerting them to the armed robbery of a convenience  ____________________ 1. Dennis Ellis, a co-defendant, was charged in count one of the indictment with illegal possession of a sawed-off shotgun in violation of 26 U.S.C. 5861(c). -2- 2 store. The police responded promptly. When they arrived at the scene, they saw a parked vehicle with its engine running. They also noticed a shotgun on the seat. Because it was apparent that the barrel of the shotgun had been sawed off, the police seized it; it was found to be fully loaded. Co- defendant Dennis Ellis came out of the store with a ski mask on the top of his head. He admitted the shotgun was his and was arrested. Defendant then came out of the store. He was forced to lie on the ground and was searched. The police found a .22 caliber Sedro pistol with one round of ammunition in the chamber in defendant's jacket pocket. It is not contested that the pistol was manufactured in California and traveled in interstate commerce to New Hampshire. The law governing the acceptance of a guilty plea under Fed. R. Crim. P. 11 is well established. A plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." McCarthy ________ v. United States, 394 U.S. 459, 466 (1969). See also United _____________ ___ ____ ______ States v. Broce, 488 U.S. 563, 570 (1989). ______ _____ In United States v. Ruiz-Del Valle, 8 F.3d 98 (1st _____________ ______________ Cir. 1993), we allowed a defendant to withdraw her guilty plea because she put the court on notice that she did not understand the nature of the charges against her. Id. at ___ 103. This was not the situation here. The nature of the charges against defendant were clearly explained to him by -3- 3 the district court judge. And there can be no doubt, from the answers to the questions asked directly of him by the judge, that defendant comprehended accurately the elements of the offense charged. Defendant now argues that because he told the judge that he had seen a psychiatrist three or four times after he was arrested, the court should have been alerted that "intent" might be an issue. Defendant was unable to give the name of the psychiatrist, and it was never suggested by defendant's attorney or defendant himself that mental competency might be an issue. Defendant told the court that he went to see the psychiatrist because "I got a habit of carrying weapons." He also said that the psychiatrist did not make an assessment of this problem. If defendant is suggesting that this is a basis for finding incompetency, we reject it. As far as "intent" and "mens rea" are concerned, ____ ___ there are two answers to defendant's assertions that they were not properly explained to him. The first is that both were explained correctly to defendant. The court stated, ____ inter alia: _____ ____ [T]he Government must prove that you knowingly received or possessed, and here you're charged with being in -- possessing, or transported the firearm in question. And when we use the word knowingly, what the law means is that you were -- that you acted voluntarily and deliberately, not by mistake or through -4- 4 inadvertence; in other words, that you voluntarily received or had in your possession the firearm in question. The second reason is that in order to convict a defendant of this crime, being a felon in possession of a firearm, the only knowledge by defendant required to be proved is that the instrument possessed was a firearm. ___ United States v. Freed, 401 U.S. 601, 607 (1971). In United _____________ _____ ______ States v. Carter, 815 F.2d 827, 829 (1987), we held that ______ ______ because the Rule 11 hearing transcript disclosed that the defendant knew the nature of the charges against him, no mens ____ rea hearing was necessary. So it is here. ___ Even if a record discloses a failure to establish a factual basis for the guilty plea, which this one does not,2 it would be of no moment. In United States v. Zorrilla, 982 _____________ ________ F.2d 28, 30 (1st Cir. 1992), cert. denied, 113 S. Ct. 1665 _____ ______ (1993), we held that lack of prejudice resulting from such failure "is fatal to appellant's claim." Here, defendant has pointed to, and we can discern no prejudice. In sum, our review of the transcript of the change of plea hearing shows that the district court judge fully complied with the strictures of Rule 11.  ____________________ 2. Defendant explicitly stated that there was no dispute with the facts as stated by the prosecutor: that a fully loaded Sedro .22 caliber pistol was found in the possession of defendant, and that the pistol was manufactured in California and traveled in interstate commerce from there to New Hampshire. -5- 5 -6- 6 The Sentencing The Sentencing ______________ The Sentence The Sentence ____________ At the hearing on the guilty plea the district court carefully explained to defendant the sentence enhancement required if it found that the Armed Career Criminal Act (ACCA), 18 U.S.C. 924(e), applied.3 Because the presentence investigation report had not been prepared at the time of the guilty-plea hearing, the judge was not sure what the enhancement would be if he found defendant to be an Armed Career Criminal. It was, therefore, agreed by the government and defendant, with the court's approval, that if the sentence exceeded 235 months, defendant would have the right to withdraw his guilty plea.  ____________________ 3. The Act provides in pertinent part: (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection. -7- 7 After a lengthy sentencing hearing the court made the following findings. The court determined that the ACCA applied. It calculated the total offense level to be 30 and the criminal history category to be 6. Based on those determinations, it found the incarceration range to be between 168 to 210 months, with no eligibility for probation. The range of supervised release was from three to five years. The fine range was from $15,000 to $150,000. A special assessment of $50 is mandated by statute. Based on these determinations the defendant was sentenced to incarceration for a term of 180 months. This is to be followed by a term of supervised release for five years. Because defendant did not have the wherewithal to pay a fine, the fine was waived. Defendant was ordered to pay the special assessment of $50 immediately. Defendant raises three sentencing issues. (1) One of the three predicate convictions necessary to implicate the ACCA was constitutionally invalid because of the ineffective assistance of counsel. (2) At least one of the three necessary ACCA convictions did not qualify as such because it was not a violent crime. (3) The district court erred in failing to depart downwards and/or failed to undertake a sufficient fact-finding inquiry into diminished capacity under U.S.S.G. 5K2.13. We discuss these contentions seriatim and reject them all. -8- 8 The Claim of Constitutional Invalidity The Claim of Constitutional Invalidity ______________________________________ On February 3, 1987, defendant pled guilty to a charge of burglary at the regional high school in New Ipswich, New Hampshire. He claimed at the sentencing hearing that, at the time of his state plea, he was not advised by his attorney, a public defender, of the rights he was giving up by entering a guilty plea. We think that Custis v. United States, 114 S. Ct. ______ _____________ 1732 (1994), prohibits a collateral attack on the state conviction. The Court held: The Armed Career Criminal Act, 18 U.S.C. 924(3) (ACCA), raises the penalty for possession of a firearm by a felon from a maximum of 10 years in prison to a mandatory minimum sentence of 15 years and a maximum of life in prison without parole if the defendant "has three previous convictions ... for a violent felony or a serious drug offense." We granted certiorari to determine whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA. We hold that a defendant has no such right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions. Id. at 1734. ___ The Court concluded its opinion as follows: We therefore hold that 924(e) does not permit Custis to use the federal sentencing forum to gain review of his state convictions. Congress did not prescribe and the Constitution does not -9- 9 require such delay and protraction of the federal sentencing process. We __ recognize, however, as did the Court of _________________________________________ Appeals, see 988 F.2d, at 1363, that _________________________________________ Custis, who was still "in custody" for _________________________________________ purposes of his state convictions at the _________________________________________ time of his federal sentencing under  _________________________________________ 924(e), may attack his state sentences in _________________________________________ Maryland or through federal habeas _________________________________________ review. . . . If Custis is successful in _______ __________________________ attacking these state sentences, he may _________________________________________ then apply for reopening of any federal _________________________________________ sentence enhanced by the state sentences. _________________________________________ We express no opinion on the appropriate disposition of such an application. Id. at 1739 (citations omitted) (emphasis ours). ___ Defendant seizes upon the delineated language to contend that since he is no longer in custody because of his state conviction and therefore cannot attack it on constitutional grounds either in state court or by federal habeas review, he should be allowed to do so in the context of his sentencing under the ACCA. This is an ingenious argument, but we do not think it can surmount the prohibition imposed by the Court against using the federal sentencing forum to review state convictions. Moreover, even putting aside the holding of Custis, ______ there is another reason for rejecting defendant's collateral constitutional attack. Although we acknowledge that defendant's claim that he was not advised by his attorney of the rights he was giving up by pleading guilty has some -10- 10 support in the state court records,4 we do not have to decide the significance of the attorney's failure to sign the plea form at the appropriate place. During defendant's cross-examination at the sentencing hearing, he admitted that the state superior court judge advised him of the rights he was giving up by pleading guilty. He then testified that he had lied to the state superior court judge when he told him that he understood all of the rights he was giving up by pleading guilty. This testimony evoked the following response from the district court judge: [I]f he was lying to Judge Bean then, certainly his credibility today to this Court is very questionable on this issue. Therefore, based on the documents and based on the testimony, the Court overrules the objection and the Court finds that the defendant was in fact represented by counsel and that he was aware of the rights that he was giving up when he entered his guilty plea and that he was aware of all of the rights that he was giving up. We agree with the government that this finding is subject to the clear error standard of review. See, e.g., United States ___ ____ _____________ v. Tuesta-Toro, 29 F.3d 771, 777 (1st Cir. 1994) (sentencing ___________  ____________________ 4. Defendant's state-court attorney had not signed at the appropriate space on the plea form, a statement confirming that he had read the advice of rights form to defendant. The state court records covering defendant's two earlier ACCA burglary convictions showed that his attorney, who represented him in all three burglary cases, confirmed by signing the plea form at the appropriate place that he had read the advice of rights. -11- 11 court's factual findings reviewed only for clear error). There was no clear error by the district court. The Claim that the State Convictions Were Not  The Claim that the State Convictions Were Not  ______________________________________________ Violent Crimes Under the ACCA Violent Crimes Under the ACCA _____________________________ The Act defines "violent felony" in pertinent part as follows: (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, . . . that . . . (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. 924(e)(2)(B)(ii). Defendant pled guilty to three prior state burglaries. He was charged in all three crimes with entering buildings with "a purpose to exercise unauthorized control over the property of another to deprive the owner thereof, the said premises not being open to the public at the time and the said Nelson Field not being licensed or privileged to enter." He was charged with entering the Eastern Mountain Sports building on July 21, 1985; with entering the Massenic Regional High School in New Ipswich, New Hampshire, on April 2, 1986; and with entering the American Legion building in Jaffrey, New Hampshire, with others, on July 4, 1985. There can be no doubt that the three crimes to which defendant pled guilty were burglaries under the New Hampshire -12- 12 statute, which states: 635:1 Burglary. 635:1 Burglary. I. A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied section thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. It is an affirmative defense to prosecution for burglary that the building or structure was abandoned. N.H. Rev. Stat. Ann. 635:1 (1973). Defendant contends that, "the factual record and statute in question show, however, that at least one of the three prior convictions did not qualify as a predicate violent felony." Defendant's Brief at 21. Defendant does not identify which of the three fails to qualify as a predicate violent felony. Except for the dates of entry and the location of the buildings, all three state indictments are identical.5 We will therefore analyze the law and the statutes as to all three predicate crimes. We start with the leading case: Taylor v. United ______ ______ States, 495 U.S. 575 (1990). The Court first held it ______ "implausible that Congress intended the meaning of 'burglary' for purposes of 924(e) to depend on the definition adopted by the state of conviction." Id. at 590. The Court, after ___  ____________________ 5. We are aware that the charge of entering the American Legion alleged doing so "with others." But this does not change the nature of the indictment. -13- 13 considering several alternative definitions, fashioned its own generic meaning: We conclude that a person has been convicted of burglary for purposes of a 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. Id. at 599. It seems beyond dispute that this was the core ___ of the three state crimes to which defendant pled guilty. The Court then went on to hold "that 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. at 600. ___ The Court's final holding was stated as follows: We therefore hold that an offense constitutes "burglary" for purposes of a 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant. Id. at 602. We cannot see how it can be reasonably contended ___ that the New Hampshire statutory definition does not "substantially correspond to 'generic burglary'." Nor has defendant explained how a person could be convicted under the New Hampshire statute and not be guilty under the generic definition. -14- 14 Nor can defendant find any way out of the ACCA box through our opinions. See United States v. Wilkinson, 926 ___ _____________ _________ F.2d 22, 29 (1st Cir.) (applying Taylor), cert. denied, 501 ______ _____ ______ U.S. 1211 (1991). In United States v. Harris, 964 F.2d 1234 _____________ ______ (1st Cir. 1992), we made explicit what was clearly implied in Taylor: ______ The Court, in referring to the use of jury instructions, did not mean that one who pleads guilty to what would otherwise constitute a "violent felony" is somehow, for future sentence-enhancement purposes, home free. Rather, the Court was giving an example (it says, "for example") of one way in which a trial court, faced ________ with a past conviction for violating a single statute that covers more than one crime, might decide which of those crimes _____ the prior conviction involved. Id. at 1236. See also United States v. Fiore, 983 F.2d 1, 4 ___ ___ ____ _____________ _____ (1st Cir. 1992), cert. denied, 113 S. Ct. 1830 (1993) _____ ______ ("burglary of a commercial building poses a potential for episodic violence so substantial as to bring such burglaries within the violent felony/crime of violence ambit."); and United States v. Bregnard, 951 F.2d 457, 460 (1st Cir. 1991), _____________ ________ cert. denied, 112 S. Ct. 2939 (1992) (state labeling a crime _____ ______ as a misdemeanor makes no difference for purposes of sentence enhancement. Under Taylor, the construction of federal laws ______ not dependent on state law). The district court did not err in using the ACCA for sentence enhancement. -15- 15 The Failure to Depart Downwards The Failure to Depart Downwards _______________________________ Defendant argues that the court's decision not to depart downwards below the statutory minimum sentence resulted from its belief that it lacked the authority to so depart and a misunderstanding of the rules of departure. This is, of course, an attempt to circumvent our well- established rule that a district court's decision not to depart downwards from the sentencing guidelines is not appealable. United States v. Lombardi, 5 F.3d 568, 571 (1st _____________ ________ Cir. 1993); United States v. Hilton, 946 F.2d 955 (1st Cir. _____________ ______ 1991) (collecting cases). Although there may be some question as to whether the district court had the discretion to depart downwards under the criteria articulated in United States v. Rivera, _____________ ______ 994 F.2d 942 (1st Cir. 1993), there can be no question that the court refused to exercise whatever discretion it may have had. During the sentencing hearing the court stated: A departure downward under the circumstances that you are requesting is strictly discretionary with the Court, and for all of the previous reasons just stated by the Court, the Court declines to exercise its discretion to depart. Not only do we have a serious prior record here, which by the way includes a conviction for being a felon in possession of a dangerous weapon, granted it was not a -- it was not a gun, but the defendant has been down this path before, and defense counsel has continued to indicate that his being arrested, that this involved just a mere possession. -16- 16 It was possession, true, but it was a loaded weapon and the defendant was intoxicated, and there is nothing more dangerous, there is no more dangerous a combination than a loaded gun and alcohol or a loaded gun and being under the influence of drugs. The Court is aware of the youth of the defendant, and were this mere possession and no prior record and no alcohol involved, there might be some grounds to consider a departure, but the circumstances before the Court provide very little, if any, justification at all for the Court to exercise its discretion in departing, and therefore the Court declines to do so and objection number five in paragraph eleven on the addendum is overruled. There is simply no basis for finding that the sentencing judge did not fully understand its authority under the Sentencing Guidelines. We therefore lack the jurisdiction to entertain defendant's argument. See United ___ ______ States v. DeCosta, No. 93-2120, slip op. at 10 (1st Cir. Oct. ______ _______ 7, 1994). Finally, defendant seems to suggest that the district court should have departed downwards by reason of defendant's "diminished capacity" under U.S.S.G. 5K2.13. Defendant's failure to request a downward departure on this ground in the district court forecloses our consideration of the issue. United States v. Ortiz, 966 F.2d 707, 717 (1st _____________ _____ Cir. 1992); United States v. Pilgrim Market Group, 944 F.2d ______________ _____________________ 14, 21 (1st Cir. 1991). We also note that there is very little evidence in the record to support such a claim. -17- 17 Affirmed. Affirmed. _________ -18- 18